UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| GEOSERVE ENERGY TRANSPORT DMCC,<br><br>         Plaintiff,<br><br>v.<br><br>M/V 0 7 VEGA S, *iu rem*,<br><br>         Defendant. | Case No.: 24-cv-2148-RSH-SBC<br><br>**ORDER: (1) GRANTING MOTION FOR ISSUANCE OF WARRANT *IN REM*; (2) APPOINTING SUBSTITUTE CUSTODIAN; AND (3) DEFERRING RULING ON MOTION TO DIRECT NOTICE**<br><br>[ECF No. 2] |
|---|---|

Before the Court is an ex parte application for an order authorizing the issuance of a warrant for the arrest of Defendant "M/V 0 7 VEGA S," IMO No. 9484247 ("Defendant Vessel") and application to appoint a substitute custodian filed by plaintiff Geoserve Energy Transport DMCC. ECF No. 2. For the reasons below, the Court grants the application.

### I. BACKGROUND

On November 15, 2024, Plaintiff filed a Verified Complaint seeking the arrest of the Defendant Vessel, her engines, tackle, apparel, furniture, gear and all other appurtenances and necessaries belonging to her, *in rem*, pursuant to Rule C of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions. ECF No. 1 ¶ 1. The Complaint alleges the following.

Around early October 2023, Plaintiff was contacted by Infinity Shipping FZCO ("Infinity") regarding the supply of fuel bunkers to the Defendant Vessel. *Id.* ¶ 6. On October 5, 2023, Plaintiff issued a Confirmation to sell very low sulfur fuel oil and low sulfur marine gas oil to Infinity, to be delivered to the Defendant Vessel on October 10, 2023. *Id.* ¶ 9; ECF No. 1-2. Pursuant to the Confirmation, on October 10, 2023, Defendant Vessel was supplied with low sulfur fuel oil and low sulfur marine gas. ECF Nos. 1 ¶ 22; 1-4. Plaintiff issued an invoice to Infinity for $188,254.78 to be paid by November 9, 2023. ECF No. 1 ¶¶ 23–24. Infinity made a partial payment on this invoice for $20,000 on February 8, 2024, leaving an outstanding principal balance of $168,254.78. *Id.* ¶ 39. Plaintiff alleges it is owed: (1) $168,254.78 in principal; (2) $42,828.00 in interest; and (3) $70,962.00 in legal expenses and costs. *Id.* ¶ 42; ECF No. 1-11.

On November 17, 2024, Plaintiff filed the instant ex parte application for an order: (1) authorizing the issuance of an arrest warrant; (2) directing manner of notice and suit; and (3) appointing a substitute custodian. ECF No. 2. On November 18, 2024, Plaintiff filed a supplemental declaration asserting that "exigent circumstances" existed to review its application as the Defendant Vessel is scheduled to depart the Port of San Diego on 4:30 p.m. on the same day. ECF No. 3 ¶ 4.

## II. JURISDICTION

Federal district courts have original jurisdiction over "[a]ny civil action of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. The Federal Maritime Act entitles "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner," to (1) "a maritime lien on the vessel"; (2) "bring a civil action in rem to enforce the lien"; and (3) to pursue those rights without alleging or proving in the action "that credit was given to the vessel." 46 U.S.C.S. § 31342.

"If a plaintiff demonstrates that it provided necessaries to a vessel by order of the owner of the vessel or a person authorized by the owner, 'it may invoke the admiralty

jurisdiction of the federal courts to enforce a necessaries lien in rem.'" *Cahuenga Assocs. v. S/V Mako*, 256 F. Supp. 3d 1092, 1094 (S.D. Cal. 2017) (quoting *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 919 (9th Cir. 2002)). The Act defines "necessaries" to include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C.S. § 31301(4). In addition, "although a maritime contract may support admiralty jurisdiction, it is not an essential prerequisite to a civil action in admiralty to enforce a statutory necessaries lien." *Id.* at 919.

## III.   ANALYSIS

### A.   Request for Arrest Warrant

"To commence an action *in rem* against a vessel, the plaintiff must file a verified complaint that describes the vessel 'with reasonable particularity' and states that the vessel 'is within the district' or will be so 'while the action is pending.'" *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 529 (9th Cir. 2018) (quoting Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(2)). "If the plaintiff meets these conditions, the district court must take the boat into custody—unless the plaintiff requests otherwise—by issuing an arrest warrant to be served by the marshal." *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 529 (9th Cir. 2018). "The rule envisions that the order will issue upon a *prima facie* showing that the plaintiff has an action *in rem* against the defendant in the amount sued for and that the property is within the district." Fed. R. Civ. P., Supp. Admiralty Rule C, Advisory Committee Notes to 1985 Amendment. "After the vessel is arrested, the owner is entitled to 'a prompt post-seizure hearing at which he can attack the verified complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings up to that point.'" *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 532 (9th Cir. 2018).

The Court has reviewed the Verified Complaint and related documents. Here, Plaintiff has satisfied the requirements of Admiralty Rule C. Plaintiff's supplemental declaration states the Defendant Vessel is located in the Port of San Diego currently berthed at Tenth Avenue Pier in San Diego, California at Berth 10-4. ECF No. 3 ¶ 3. The Defendant Vessel is registered pursuant to the laws of Antigua and Barbuda with IMO No. 9484247.

ECF No. 1 ¶ 5. Plaintiff alleges it provided very low sulfur fuel oil and low sulfur marine gas oil to the Defendant Vessel via its physical supplier on October 10, 2023. *Id.* ¶¶ 9, 22. These are "necessaries" under the Maritime Lien Act. *See Ventura Packers*, 305 F.3d at 923 ("[M]odern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation."). Plaintiff alleges it was paid some money in fulfillment of Infinity's payment obligations, but that an outstanding sum remains due. *Id.* ¶¶ 39, 42. Finally, Plaintiff's CEO submitted a declaration, attached to the Complaint, declaring under the penalty of perjury that the facts laid out in the Complaint are true and correct. ECF No. 1 at 15.

For the reasons set forth above, the Court concludes Plaintiff has made a *prima facie* case demonstrating an *in rem* action over the Defendant Vessel is proper and that its obligations under Rule C have been met. *See Marine Grp. Boat Works, LLC v. Heather*, No. 24-cv-1303-BAS-DDL, 2024 U.S. Dist. LEXIS 135707, at *5 (S.D. Cal. July 30, 2024); *Cap One Inc. v. MV Sierra Rose*, No. 2:19-cv-01911-TLN-CKD, 2019 U.S. Dist. LEXIS 213805, at *2–3 (E.D. Cal. Dec. 11, 2019); *Cahuenga Assocs. v. S/V Mako*, 256 F. Supp. 3d 1092, 1095 (S.D. Cal. 2017). Plaintiff's request to issue a warrant is therefore granted.

### B. Motion to Substitute Custodian

Plaintiff has also moved the Court to appoint National Maritime Services, Inc. ("National Maritime") as substitute custodian for the Defendant Vessel. ECF No. 2 at 10.

Under Southern District Local Rule E.1(c)(2) (Actions in Rem and Quasi in Rem):

> On motion of any party, made after notice to the marshal and all parties who have appeared, a judge may order that custody of the vessel be given to the operator of a marina or similar facility, repair yard, or company regularly carrying on the business of ship's agent, if a judge finds that such firm or person can and will safely keep the vessel and has in effect adequate insurance to cover liability for failure to do so.

Civil L.R. E.1(c)(2).

///

The rule also contemplates the movement of the arrested vessel:

> If the vessel must be moved to the place where custody will be maintained, a judge may also require insurance or other security to protect those having an interest in the vessel, as well as those claiming against her, from loss of damage to the res, liability of the vessel, incurred during movement. The order allowing such custody must fix fees to be charged therefor and for any other services to be rendered the vessel and must provide for their payment to the marshal in advance.

*Id.*

Here, the Court is satisfied that National Maritime is able to safely harbor and move the Defendant Vessel. In support of its request, Plaintiff submits the declaration of G. Robert Toney, the Chairman and Founder of National Maritime. Mr. Toney declares that "National Maritime is familiar with the Vessel and can adequately supervise and safely keep her . . . during the pendency of this suit." ECF No. 2-1 ¶ 4. Mr. Toney further declares that National Maritime has liability insurance and assets adequate to respond in damages for loss of or injury to the Vessel during said custody or for damages sustained by third parties due to the negligence of National Maritime or its employees and/or agents committed during said custody. Although Mr. Toney does not attest to certain insurance policy limits, he includes a Certificate of Liability Insurance as Exhibit 2 to his declaration that appears to indicate that National Maritime maintains the following insurance policies: (1) a $2,000,000 commercial general liability policy and (2) a $3,000,000 umbrella policy. ECF No. 2-1 Ex. 2.

Further, Mr. Toney explains that National Maritime provides services including cleaning, maintenance, and custodianship. ECF No. 2-1 ¶ 2. Further, National Maritime agrees to perform certain custodianship services upon the Vessel, including but not limited to the following:

> a. Assume custody of the Vessel as substitute custodian at its present berth;
> b. Inventory all equipment and property on the Vessel;
> c. Maintain a keeper on the Vessel as necessary to maintain security for the Vessel until it has been brought to a secure facility;
> d. Periodically inspect mooring lines;

  e. Conduct on-board inspections of the Vessel to assess general maintenance needs; and

  f. Provide additional services such as cleaning and minor maintenance as reasonably appropriate under the circumstances

*Id.* ¶ 4.

Based on the above facts, the Court concludes National Maritime can and will safely act as an adequate custodian for the Defendant Vessel. The Court therefore grants Plaintiff's motion for appointment of substitute custodian.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for an Arrest Warrant as follows:

1. The immediate issuance of a Warrant for the arrest of the Defendant Vessel "M/V 0 7 VEGA S," IMO No. 9484247 and her engines, tackle, apparel, furniture, gear and all other appurtenances and necessaries belonging to her, is authorized.

2. The Clerk of Court is **DIRECTED** to prepare a Warrant for Arrest of the Defendant Vessel and shall deliver it to the United States Marshal for the Southern District of California for service.

3. Any person claiming an interest in the Defendant Vessel shall be entitled upon request to a prompt hearing, at which Plaintiff shall be required to show why the arrest should not be vacated or other relief granted consistent with the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. A copy of this Order is to be attached to and served with the Warrant for Arrest. Plaintiff's counsel is further **DIRECTED** to serve by mail a copy of this Order to the person(s) believed to be the owner(s) of the Defendant Vessel.

The Court additionally **GRANTS** Plaintiff's Motion for appointment of a substitute custodian as follows:

1. The U.S. Marshal is authorized and directed upon seizure of the Defendant Vessel to surrender the possession of it to the substitute custodian named herein. Upon such surrender, the Marshal will be discharged from the duties and responsibilities for the

safekeeping of the Defendant Vessel and held harmless from and against any and all claims whatever arising out of the substituted possession and safekeeping.

2. National Maritime is appointed the substitute custodian of the Defendant Vessel, to retain her in its custody in her current slip location or another one at the Port of San Diego for possession and safekeeping in accordance with the Declaration of Robert Toney (Doc. No. 2-1) and the recitals therein contained until further order of this Court.

3. Without a Court order, National Maritime shall not sell or transfer the Defendant Vessel, nor run the Defendant Vessel's engines or generators.

4. Except as directed by this Court or in case of emergency, National Maritime will not release the Defendant Vessel to anyone or let anyone aboard her.

Finally, in light of the exigent circumstances of Plaintiff's request, the Court **DEFERS** ruling on Plaintiff's motion directing manner of notice.

**IT IS SO ORDERED.**

Dated: November 18, 2024

_____
Hon. Robert S. Huie
United States District Judge